

Counseling and Advising Clients Exclusively on Laws of the Workplace

Zabell & Collotta, P.C.
1 Corporate Drive
Suite 103
Bohemia, New York 11716
Tel. 631-589-7242
Fax. 631-563-7475
www.Laborlawsny.com

**Saul D. Zabell**
Email: SZabell@laborlawsny.com

December 1, 2020

<u>*VIA* ELECTRONIC CASE FILING</u>

Hon. Joan M. Azrack
United States District Court Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   Re: Pape v. The Suffolk County Society for the Prevention of Cruelty to Animals, et al.
     <u>Case No.: 20-cv-01490 (JMA) (ST)</u>

Your Honor:

  We submit this letter in advance of the Settlement Conference scheduled to convene before Your Honor on December 2, 2020 at 1:00 p.m to provide some pertinent background information. While the Court did not Order the Parties to submit settlement position statements, we believe Your Honor would benefit from this submission, and the attachments thereto, in light of the fact that the conference will be held virtually.

  Ms. Pape began her employment as an inspector for the Suffolk County Society for the Prevention of Cruelty to Animals ("SCSPCA") in or around January 2018. Ms. Pape was hired after volunteering at the SCSPCA for several years beforehand. Ms. Pape, a long-time animal advocate, believed she had finally secured her dream job. The position suited Ms. Pape well, as she soon proved herself to be an exemplary employee. Ms. Pape's job performance was recognized by her colleagues and local public officials with whom she worked. *See* Exhibit 1. Ms. Pape has witnessed first-hand the intolerable, yet unnoticed cruelty that befalls many animals living in Suffolk County. Ms. Pape firmly believes that while efforts are being made by few to combat this ongoing issue, there is much more that may be done. Accordingly, Ms. Pape always approached her job with the professionalism necessary to advance the rights and interests of the animals she sought to protect.



However, Ms. Pape's employment with the SCSPCA was cut short because she also stood up against the injustices made against her.

Defendants' FLSA and NYLL Violations

First and foremost, Defendants failed to compensate Ms. Pape for the hours she underwent training with the Suffolk County Sheriff's Department. Ms. Pape was enrolled in the Training Academy from February 3, 2018 through March 9, 2018. Ms. Pape was required to attend the Training Academy for approximately forty (40) hours each week as to become a New York State Peace Officer, a requirement for her position as an inspector. However, Defendants failed to compensate Ms. Pape for the hours she spent undergoing mandatory job training. Defendants' failure to compensate Ms. Pape for her time spent enrolled in the Training Academy is a clear violation of the FLSA and NYLL. Under the FLSA, an employee need not be compensated for hours spent enrolled in training hours worked where: "1) [a]ttendance is outside of the employee's regular working hours; 2) [a]ttendance is in fact voluntary; 3) [t]he course, lecture, or meeting is not directly related to the employee's job; and 4) [t]he employee does not perform any productive work during such attendance. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 721 (2d Cir. 2001) (*citing* 29 C.F.R. § 785.30). Ms. Pape's participation in the Training Academy: 1) occurred during her normal working hours; 2) was not voluntary; and 3) was directly related to her position as an investigator with the SCSPCA. Accordingly, it cannot reasonably be disputed that Ms. Pape must be compensated for all hours she was enrolled in the Training Academy.

Defendants also violated the FLSA and NYLL by failing to provide Ms. Pape with overtime pay for hours worked in excess of forty (40) hours per week. Instead, Ms. Pape was advised that her hours worked would not be tracked or recorded. Defendant was also advised and that she was expected to work a forty (40) hour work week and that any hours worked beyond forty (40) hours in a given work week are non-compensable "volunteer" hours. While Ms. Pape initially believed the "volunteer" time would *be de minimis*, she soon realized Defendants sought to take advantage of her tireless work ethic. Aside from the weeks spent at the training academy, from January 2018 through May 2019, Ms. Pape was required to work a forty (40) hour workweek and no less than twenty (20) "volunteer" hours each week. This fact was confirmed by an e-mail Ms. Pape sent to her sergeant, Don Bambrick, on June 7, 2018. *See* Exhibit 2. Despite their use of the term "volunteer", the overtime worked by Ms. Pape was in no way voluntary. Ms. Pape was required to work these additional hours in furtherance of investigations and arrests. It is not as though Ms. Pape could not simply pack up her things and go home for the day while

**Zabell & Collotta, P.C.**
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

December 1, 2020
Page 3 of 6

she was in furtherance of participating and processing an arrest. Furthermore, Ms. Pape was required to respond to calls that came in outside of her regularly scheduled work hours, including, but not limited to, weekend and evening calls. *See* Exhibit 2. Moreover, the volunteer work that was performed by Ms. Pape was identical to her job duties for which she received compensation. Accordingly, Ms. Pape must be compensated for all hours she worked as a "volunteer" while employed by Defendants. *See* U.S. Dep't of Labor, Wage & Hour Division, Fact Sheet #14A: Non-Profit Organizations and the Fair Labor Standards Act (FLSA).

Defendants similarly violated NYLL 195(1) and NYLL 195(3). Defendants violated NYLL 195(1) by failing to provide Ms. Pape a notice at the beginning of her employment that contained the information required by statute, including, but not limited to, her regular rate of pay and overtime rate of pay. Additionally, Defendants violated NYLL 195(3) by failing to issue Ms. Pape wage statements with each payment of wages that included all information required by statute, including, but not limited to, the total number of hours worked each week.

Defendants' Discriminatory Conduct

Ms. Pape first began to experience discrimination on the basis of her sex in April 2019. Specifically, Ms. Pape was advised that her fervor was making her male colleagues look poorly by comparison. Furthermore, Ms. Pape was warned that her supervisors would begin to make her look bad by filling her personnel file with inaccurate reports so as to besmirch her reputation. Ms. Pape also was discriminated against by Defendants when they failed to provide her with the equipment afforded to her male counterparts. For example, Ms. Pape requested, and was denied, access to a bulletproof vest that was designed for women. Meanwhile, Defendants fulfilled the requests made by her male colleagues for assault rifles that were not ordinarily used in the scope of the SCSPCA's work. Additionally, Defendants paid to clean the uniforms of Ms. Pape's male colleagues but not her own.

Defendants Retaliated against Ms. Pape in violation of the FLSA, NYLL, and NYSHRL

Ms. Pape, recognizing Defendants' unlawful conduct, complained to her superiors in May 2019 regarding the uncompensated "volunteer" hours she was required to work. Furthermore, Ms. Pape complained that she believed she was being discriminated against because she was a woman. Defendants' immediate response was to retaliate by restricting and tracking the number of hours that she worked. Upon information and belief, Ms. Pape was the only individual who had her


**Zabell & Collotta, P.C.**
EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW

December 1, 2020
Page 4 of 6

hours tracked by Defendants. Furthermore, Defendants began to assign Ms. Pape with fewer field assignments, and more administrative work. Defendants retaliatory conduct only continued. Defendants began to manufacture false allegations regarding Ms. Pape's job performance. Accordingly, Ms. Pape filed a Charge of Discrimination with the U.S. Equal Opportunity Commission on February 17, 2020. Moreover, Ms. Pape commenced this action on March 20, 2020. In response, and in further retaliation, Defendants terminated Ms. Pape's employment on April 20, 2020. Worse yet, Defendants wrote to the New York State Department of Criminal Justice Services ("DCJS") and advised that Ms. Pape had been terminated for incompetence and misconduct – without identifying the conduct or providing Ms. Pape with the opportunity to respond. As a result, the DCJS revoked Ms. Pape's Peace Officer Status effective February 19, 2020. This revocation far exceeds the harm typically seen in a retaliation claim. *See* Exhibit 3. By acting to have Ms. Pape's Peace Officer status revoked and training certification invalidated, Defendants have seriously impaired her ability to obtain alternative employment. Ms. Pape is currently unable to obtain employment in other positions that require Peace Officer status, such as with the Nassau County Society for the Prevention of Cruelty to Animals. Similarly, in July 2020, Ms. Pape learned that Defendant Laton advised the Suffolk County Police Department's Pistol Licensing Bureau that Ms. Pape "exercises bad judgment" and has a "history of filing false reports." Defendants' continued retaliation is abhorrent, and they have sought to torture Ms. Pape long after her employment has ended. Accordingly, Ms. Pape must be afforded all redress to which she may be entitled under the law.

<u>Defendants' Proffered Defense Regarding FLSA Applicability</u>

Though previously addressed in our opposition to Defendants' Pre-Motion Conference letter, it must be restated that their claim that the FLSA is not applicable in the instant action is not only inaccurate, but also non-dispositive.

First and foremost, Plaintiff's claim for retaliation under the FLSA applies to all individuals and entities, regardless of enterprise or individual coverage. *Centeno-Bernuy v. Perry*, 302 F. Supp. 2d 128, 135–36 (W.D.N.Y. 2003); see also U.S. Department of Labor Fact Sheet #77A (December 2011) (stating "because Section 15(a)(3) prohibits "any person" from retaliating against "any employee", the protection applies to all employees of an employer even in those instances in which the employee's work and the employer are not covered by the FLSA). Defendant SCSPCA is undisputedly a "person" prohibited from retaliating against Plaintiff. Accordingly, at a minimum, Ms. Pape's FLSA retaliation claim must be advanced. Therefore, Ms. Pape's claims for unpaid overtime and minimum wages brought under the NYLL would be afforded supplemental jurisdiction.


Second, enterprise liability is a factual issue that must be explored in discovery. It is well settled that the plaintiff "bears the burden of establishing FLSA coverage to prove his employer's liability." *Ni Ping v. No. 1 Great Wall of Fulton 168*, No. 16-CV-1304 (SJF) (SIL), 2017 WL 1330323, at *3 (E.D.N.Y. Apr. 5, 2017); *Romero v. Jocorena Bakery, Inc.*, No. CV 09-5402 (SJF) (ETB), 2010 WL 4781110, at *2 (E.D.N.Y. Nov. 23, 2010) (holding that the requirement that the enterprise has at least $500,000 in annual gross sales is not a jurisdictional issue, but rather an element of plaintiffs' cause of action). The $500,000.00 threshold of annual gross volume of sales made or business done is not a jurisdictional requisite, but rather an elemental of Plaintiff's claim that must be proven. *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 350 (E.D.N.Y. 2014) (*quoting Padilla v. Manlapaz*, 643 F. Supp. 2d 298, 301 (E.D.N.Y. 2009)). Defendants' claim that the SCSPCA is not an enterprise. However, it is clear this issue must be addressed in discovery, and not at the pleadings stage. Moreover, it is an issue that is not dispositive as to Ms. Pape's claims for unpaid wages. Assuming, *arguendo*, the FLSA does not apply to Defendant SCSPCA, that determination would have no impact on Plaintiff's NYLL claims. Accordingly, analysis into the applicability of FLSA enterprise coverage should have no impact on settlement negotiations.

Ms. Pape's Damages

Ms. Pape has been caused to suffer economic and non-economic injuries as a result of Defendants' unlawful conduct. Ms. Pape is entitled to $4,631.25 as unpaid wages for the uncompensated hours she spent at the Training Academy. Ms. Pape is also entitled to $43,732.03 in unpaid overtimes wages resulting from the mandatory "volunteer" hours she was required to work. All told, Ms. Pape's unpaid wages total $48363.28, for which she is entitled to an equal amount as liquidated damages. Ms. Pape is also entitled to $10,000.00 resulting from Defendants' violations of NYLL 195(1) and NYLL 195(3). Additionally, Ms. Pape has lost approximately $25,950.00 in wages following her termination on April 20, 2020. Furthermore, Ms. Pape seeks emotional damages in an amount not less than $50,000.00 and punitive damages in an amount not less than $150,000.00. The emotional damages and retaliatory damages seek to redress Ms. Pape for Defendants interference with her career within the SCSPCA as well as with other institutions that require her to maintain Peace Officer status. This brings Ms. Pape's total damages to $332,676.56. Finally, Ms. Pape seeks attorneys' fees in an amount equal to one-third of her total damages, or $110,892.19. A detailed calculation of Ms. Pape's damages is attached hereto as Exhibit 4. In addition to a monetary resolution, Defendants must retract the inaccurate representations made to the New York State Department of Criminal Justice that have resulted in the revocation of her Peace Officer status.



# Zabell & Collotta, P.C.
**EMPLOYMENT COUNSELING, LITIGATION, LABOR & BENEFITS LAW**

December 1, 2020
Page 6 of 6

Additionally, Ms. Pape seeks reinstatement to her position within the SCSPCA so that she may further pursue protecting the rights and interests of animals in the County in which she resides.

    We thank the Court again for its time and attention to this matter. We remain prepared to address any questions Your Honor may have in furtherance of the settlement conference.

Respectfully submitted,

ZABELL & COLLOTTA, P.C.

Saul D. Zabell

Encl.

cc: Client